**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Richard B. Brozo,

Plaintiff,

vs.

Oracle Corporation, a Delaware corporation,

Defendant.

Civil No. 00-751 (RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

---

James H. Kaster and Steven Andrew Smith, Nichols, Kaster & Anderson, PLLP, Minneapolis, Minnesota, for Plaintiff.

Daniel L. Palmquist and Joel E. Abrahamson, Leonard, Street and Deinard, P.A., Minneapolis, Minnesota, for Defendant.

---

The above matter was tried before the undersigned and a jury on October 9-11, 2001. The jury's verdict, in the form of answers to interrogatories, was returned on October 12, 2001. By that verdict, the jury determined that Defendant Oracle Corporation had breached its employment contract with Plaintiff Brozo and awarded Brozo $604,249 in damages.

Now before the Court are the parties' post-trial motions. Oracle seeks judgment as a matter of law or, in the alternative, a new trial. Brozo seeks prejudgment interest, a statutory penalty, attorney's fees, and costs. Oracle's Motion will be denied; Brozo's will be granted.

DEC 28 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 28 2001
DEPUTY CLERK

## A. Judgment as a Matter of Law

Judgment as a matter of law is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party . . . ." Fed. R. Civ. P. 50(a). In this case, the Court determined, when denying cross-motions for summary judgment, that the applicable contract language governing the earning and payment of commissions was ambiguous. That determination was based on the Court's reading of the two documents constituting the contract and the specific language contained therein. Nothing has been presented to the Court since its initial determination to alter the undersigned's reading of the contract provisions. The applicable language is ambiguous; it does not give to the Defendant unfettered discretion to deduct or limit amounts otherwise payable under Oracle's incentive compensation plan. Oracle points to language giving it the "right to change the Plan at any time," (Sec. II. A., Terms and Conditions), and the right to "determine the appropriate treatment of the transaction under the Plan." (Individualized Compensation Plan, Passage B.) In isolation, these words/phrases may appear unambiguous, but in the context of the Individualized Compensation Plan and the Terms and Conditions, the urged interpretation simply makes no sense. Without regard to the trial testimony (which clearly contradicted Defendant's interpretation), Defendant's construction would convert what is clearly an employment contract into nothing more than a "we'll pay you whatever we want" and "we'll let you know our decision whenever we want to–even at the end of the fiscal year when you–the employee–have performed up to expectations" arrangement.

Defendant seems to be now guided (really misguided) by the language of the Eighth Circuit in Vigoro Indus., Inc. v. Crisp, 82 F.3d 785, 791 (8th Cir. 1996) where Judge Loken stated "When a contract term leaves a decision to the discretion of one party, that decision is virtually unreviewable." No one quarrels with that language–not the Plaintiff and not this Court. The present case is not, however, one in which the contract terms leave to the "discretion of one party" the how, when and under what circumstances to pay an employee for performance. In Vigoro, the incentive compensation plan permitted the employer to "deduct 'amounts Management deems appropriate as a penalty for mismanagement . . . .' " Id. In exercising its rights under this provision, management "decided that [the employee] deserved no incentive bonus in a year in which he breached his duty of loyalty by soliciting employees and customers to join him in a competing venture." Id. (emphasis added). That type of employee misconduct will be penalized almost anywhere. Clearly the facts in Vigoro render the holding there inapplicable here. The documents here have no standards to be employed and are not limited to misconduct such as occurred in Vigoro.

The contract language here is ambiguous and that ambiguity was properly submitted to the jury for resolution.

The jury was instructed as follows:

> The dispute in this case requires your interpretation of the "contract" between Mr. Brozo and Oracle. The contract in this case is comprised of two documents, Defendant's exhibits 100 and 101 or Plaintiff's exhibits 1 and 2. . . . .

Jury Instruction No. 8.

> Contract Breach
>
> A contract is breached when there is a failure without legal justification to perform all or any substantial part of what is promised in a contract.
>
> This breach occurs when one party fails to carry out part of the contract that requires immediate performance.
>
> In this case, Mr. Brozo's position is that the contract between himself and Oracle called for the payment of commissions in accordance with an established schedule and that the contract did not permit Oracle to alter, revise, or cap the commission otherwise owing to Mr. Brozo.
>
> Oracle's position is that the contract between itself and Mr. Brozo permitted Oracle to alter, revise, or cap the commission otherwise owing to Mr. Brozo.
>
> It is not disputed that Oracle did "cap" the commission owing to Mr. Brozo. If you determine that the contract permitted Oracle to cap the commission, then there has been no breach of the contract and you must answer "no" to question No. 2 on the special verdict form.
>
> If you determine that the contract did not permit Oracle to "cap" Mr. Brozo's commission then there has been a breach of the contract and you must answer "yes" to question No. 2 on the special verdict form.

Jury Instruction No. 9. The Motion to enter judgment as a matter of law in favor of Defendant will be denied.

## B. New Trial

### 1. Oracle's Motion for a New Trial

When deciding a motion for a new trial, the Court's primary concern is to prevent the verdict from working an injustice. Leichihman v. Pickwick, Int'l, 814 F.2d 1263, 1266 (8th Cir. 1987), cert. denied, 484 U.S. 855 (1987). In other words, "[t]he court must be motivated by more than the fact that it would have come to a different conclusion had it been the trier of fact. The court must feel that the jury reached a seriously erroneous result in spite of the clear weight of the evidence." Id. Accordingly, the standard is whether the verdict is against the weight of the evidence. Id. at 1267. In assessing a new

trial motion, the Court may consider all the evidence adduced at trial and weigh that evidence for itself. Id. at 1266.

Oracle first contends that the Court's refusal to allow Christian Facey, Senior Director of Global Sales Planning and Compensation at Oracle, to testify as to the purpose of Section II of the Fiscal Year 1999 Oracle America's License Sales Terms and Conditions ("Terms and Conditions") deprived Oracle of a fair trial. At trial, however, Facey did testify as to Oracle's interpretation of Section II and how that section fit within the overall compensation plan at Oracle. Mary Ann Gillespie, a Senior Vice-President at Oracle, as well as other Oracle employees, also testified about what Oracle understood Section II to mean. The Court concludes that Oracle was given sufficient opportunity to explain the purpose of Section II of the Terms and Conditions.

Oracle next contends that Brozo violated the Court's pretrial Order, which in part provided that Brozo was "precluded from arguing that he neither saw nor was presented with" the Terms and Conditions of his contract, and that such violation deprived Oracle of a fair trial. Oracle contends that during Brozo's opening statement, Plaintiff's counsel stated that Brozo had never seen the Terms and Conditions of his contract with Oracle. Oracle further contends that Brozo himself testified that he had not seen the Terms and Conditions of his contract with Oracle. Oracle argues that these statements "poisoned the minds of the jurors with the unfounded notion that Plaintiff should not be bound by the Terms and Conditions because Plaintiff never *received* the Terms and Conditions." (Defendant's Mem. in Supp. of its Mot. for J. as a Matter of Law or a New Trial, p. 9.) In this case, the jury was clearly instructed that the "contract" between Oracle and Brozo

consisted of both the Terms and Conditions and the Fiscal Year 1999 Oracle America's Compensation Plan ("Personal Compensation Plan"). (Jury Instruction No. 8.) Additionally, in closing arguments, counsel for both Plaintiff and Defendant argued as to what the Terms and Conditions meant and not whether they applied. There simply was no violation of the Court's pretrial ruling.

Oracle also contends that the Court's failure to give Defendant's Proposed Jury Instruction No. 17 deprived it of a fair trial. Defendant's Proposed Jury Instruction No. 17 provided: "Where a contract provides that the employer retains discretion to determine amounts payable under a compensation plan, that term is valid and enforceable." In determining whether the Court committed an error in failing to submit a proposed instruction to the jury, the Court looks to see "whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Karcher v. Emerson Electric Co., 94 F.3d 502, 510 (8th Cir. 1996). Oracle argues that because of the lack of this instruction "the jury was not equipped to assess the validity of the Contract at issue." (Defendant's Mem. in Supp. of Mot. for J. as a Matter of Law, p. 10). The validity of the contract provision, however, was never in issue in this case and the jury was instructed as such. Jury Instruction No. 8 provided in part:

> The dispute in this case requires your interpretation of the "contract" between Mr. Brozo and Oracle. The contract in this case is comprised of two documents, Defendant's exhibits 100 and 101 or Plaintiff's exhibits 1 and 2.

> You should interpret the contract so as to give effect and meaning to all language in the contract.

(Jury Instruction No. 8.) There was no error in failing to submit the proposed instruction to the jury.

Finally, Oracle contends that Plaintiff's counsel's "contact" with a juror on the second day of trial deprived Oracle of a fair trial. The Court, with approval of counsel, conducted an in camera examination in which the juror informed the Court that, although she had seen counsel on the street the previous night, she had not heard anything they had said. The Court concluded that there was no juror contact, and certainly no improper juror contact. This asserted ground for a new trial is without merit.

In conclusion, the Court concludes that the issue of whether there was a breach of the employment agreement was properly submitted to the jury. The manner of that submission was agreed to by the parties. The jury's verdict is fully supported by the evidence and will stand.

**2. Brozo's Motion for Prejudgment Interest**

Brozo has petitioned the Court for $85,687.47 in prejudgment interest. Minn. Stat. § 549.09 provides for prejudgment interest to be computed from the time of the commencement of the action or when a written demand is made "[e]xcept as otherwise provided by contract or allowed by law." Minn. Stat. § 549.09, subd. 1(b). The statute left in place the common law method of computing liquidated interest as it "supplemented, but did not replace, the existing common law allowing prejudgment interest." Trapp v. Hancuh, 587 N.W.2d 61, 63 (Minn. Ct. App. 1998) (citing ICC Leasing Corp. v. Midwestern Mach. Co., 257 N.W.2d 551, 556 (Minn. 1997)).

Brozo contends that he is owed prejudgment interest from the day his commission was due, June 1, 1999, because the amount was clearly liquidated and readily ascertainable as of the date it was due. Oracle, basing its position on Minn. Stat. § 549.09, contends that Brozo's claim did not arise until February 18, 2001, 24 hours after Brozo made a written demand for payment of the commission.

Prejudgment interest from the time the claim arises is appropriate when the amount demanded can be ascertained by computation or reference to generally recognized standards and does not depend on a contingency. Jostens, Inc. v. CNA Ins., Continental Cas. Co., 336 N.W.2d 544, 546 (Minn. 1983). In this case, Brozo's commission is readily ascertainable by reference to the Personal Compensation Plan. Prejudgment interest, therefore, began to accrue on June 1, 1999.

The prejudgment interest statute provides that interest is computed as simple interest per annum, based on a bank-discounted secondary market yield of one-year treasury bills. Minn. Stat. § 549.09, subd. 1(c). Prejudgment interest shall be computed at the following rates: for the period from June 1 through December 31, 1999–4%, for the period from January 1 through December 31, 2000–5%, and for the period from January 1 through October 12, 2001–6%. The Court, therefore, awards Brozo $73,218.72 in prejudgment interest.

### 3. Brozo's Motion for a Statutory Penalty

Brozo also moves for a statutory penalty under Minn. Stat. § 181.14, subd. 2, arguing that in calculating the penalty, the Court should consider both his salary and his

commissions. Oracle contends that Brozo has miscalculated the penalty by considering the commissions that he was paid in addition to his salary.

Under Minn. Stat. § 181.14, subd. 2, after an employee resigns, an employer who fails to pay wages or commissions within 24 hours after a demand "shall be liable to the employee for an additional sum equal to the amount of the employee's average daily earnings provided in the contract of employment, for every day, not to exceed 15 days in all, until such payment or other settlement satisfactory to the employee is made." (Emphasis added.) Brozo argues that his "average daily earnings" should be calculated by taking his commissions and salary into account. Oracle, however, argues that the commissions are not part of the "average daily earnings."

Minn. Stat. § 181.14 clearly provides for the payment of a penalty in a case where an employee is paid solely on commission. In such a case, the penalty would be based on the employee's commissions for the year. This case is no different. The contract at issue clearly provided for the payment of commissions as part of Brozo's compensation. Brozo is entitled to a statutory penalty which takes his commissions into account. The Court, therefore, awards Brozo a statutory penalty of $54,170.40.

**4. Brozo's Motion for Attorney's Fees**

"[S]tate law governs the availability of attorney fees in diversity cases where no conflicting federal statute or court rule applies." Burlington Northern R. Co. v. Farmers Union Oil Co. of Rolla, 207 F.3d 526, 534 (8th Cir. 2000). Under Minn. Stat. § 181.171, "the court shall order an employer who is found to have committed a violation of [Minn.

Stat. § 181.14] to pay the aggrieved party reasonable costs, disbursements, witness fees, and attorney fees."

The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, what is commonly referred to as the "lodestar figure." The number of hours and rates submitted by plaintiff's counsel is the departure point for the Court's analysis of the present attorney's fees request.

In this case, Plaintiff requests $202,660 in attorney's fees, based upon 929.3 hours of professional services. Of that time, 302.3 hours were billed by James Kaster, lead counsel for Brozo, at the rate of $350 an hour, totaling $105,805 in attorney's fees. Oracle contends that Kaster's rate is unreasonable and suggests that an hourly rate of $280 would be more appropriate.

In determining a reasonable hourly rate, the Court looks to the prevailing market rate in the community in which the litigation is situated, specifically at the prevailing rate for similar legal services performed by attorneys of comparable skill, experience, and reputation. <u>McDonald v. Armontrout</u>, 860 F.2d 1456, 1458 (8th Cir. 1988). Plaintiff has provided the Court with an affidavit of Lawrence R. Altman, a Minneapolis litigator, who specializes in the area of employment law, who opines that Kaster's rate of $350 is "well within the range of billing rates for [an attorney of his] experience in the field of employment law in the Minneapolis-St. Paul metropolitan area." (Affidavit of Steven Andrew Smith ¶ 16, Exh. G.) Oracle, on the other hand, has provided the Court with three affidavits, from Robert J. Huber, a shareholder at Leonard, Street and Deinard, who

specializes in the area of construction litigation, Robert L. Demay, a shareholder at Leonard, Street and Deinard, who specializes in complex commercial litigation, and Ann Huntrods, an attorney at Briggs and Morgan, who specializes in employment law, each stating that their personal billing rate is between $280 and $295 an hour, but failing to address whether Kaster's rate is reasonable. The Court finds that Kaster's rate is reasonable for the Minneapolis-St. Paul legal market and that the hours expended by Kaster and other associates with him on the litigation were likewise reasonable. The Court will award attorney's fees in the requested amount of $202,660.

**5. Brozo's Motion for Costs**

Brozo seeks to recover $48,100.86 as the cost of bringing this action under Minn. Stat. § 181.171, which entitles a plaintiff to recover all reasonable costs, disbursements, and witness fees. Oracle contends that a number of items requested are not reimbursable and that Brozo's motion for costs is premature.

In diversity actions, the allowance of costs is a procedural matter and state law in and of itself is not controlling. Glassman Const. Co., Inc. v. Maryland City Plaza, Inc., 371 F. Supp. 1154, 1162 (D. Md. 1974). Instead, Federal Rule of Civil Procedure 54(d) is applicable in this action, and, therefore, Plaintiff is entitled to costs under it and not Minn. Stat. § 181.171. Federal Rule 54(d) provides that costs, other than attorney's fees, shall be allowed as a matter of course to the prevailing party. The term "costs" is further defined in 28 U.S.C. § 1920, which provides:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;

> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920. Federal courts are bound by the foregoing and are not given discretion to impose additional items as costs without explicit statutory authorization. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987). Oracle objects to six different items identified as costs by Brozo. Each item will be addressed in turn.

First, Oracle contends that Brozo should only be reimbursed for photocopying charges directly connected with exhibits used at trial. The statute is not that limited, however, and allows for all photocopies that were obtained for use in the case. 28 U.S.C. § 1920(4). This would include photocopies that were used during depositions and photocopies of briefs for the court. As Oracle does not contend that the photocopies were not for use in the case but only that they were not used at trial, the Court will allow the photocopying charges to be taxed against Oracle.

Second, Brozo seeks to recover $176.68 for postage charges. The statute does not anticipate the recovery of postage charges. The Court, therefore, has no authority to tax such items to Oracle and those charges will be excluded from the final calculation of costs.

Third, Brozo seeks to recover $1,934.70 for services rendered by JW Claim Investigations. Again, 28 U.S.C. § 1920 does not authorize the Court to tax this item to Oracle and it will be excluded from the final calculation of costs.

Fourth, 28 U.S.C. § 1821 limits the amount the Court may award for expert fees. "[F]ederal courts have no authority to award expert witness fees in excess of the statutory limit set by Congress . . ." Crawford, 482 U.S. at 443. Brozo, however, requests $22,931.30 for expert witness fees. Having no authority to tax this item to Oracle, the Court awards Brozo the sum of $40 for Neil Lapidus's one day of trial testimony.

Fifth, Brozo seeks reimbursement for an expenditure of $7,875.25 to the National Jury Project. Again the statute does not anticipate such a charge, and it will be excluded from the final calculation of costs.

Pursuant to the foregoing, and upon all the files, records and proceedings herein, **IT IS ORDERED**:

1. Defendant's Motion for Judgment as a Matter of Law and Alternative Motion for New Trial (Doc. No. 61) is **DENIED**;

2. Plaintiff's Motion for Prejudgment Interest, Civil Penalty, Attorney's Fees and Costs (Doc. No. 63) is **GRANTED** and Plaintiff is awarded the sums set forth below:

(a) prejudgment interest in the amount of $73,218.72;

(b) a statutory penalty in the amount of $54,170.40;

(c) attorney's fees in the amount of $202,660.00; and

(d) costs in the amount of $8,037.27.

3. Upon payment of the foregoing, together with the monetary the judgment ($604,249.00) entered on October 17, 2001, the Complaint herein will be **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: December 28, 2001

RICHARD H. KYLE
United States District Judge

DEC 28 2001

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995